Request of House of Representatives, No. 4596.

OPINION OF THE JUSTICES.

Submitted June 7, 1957.

Answer returned June 28, 1957.

532

The following answer was returned:

*To the House of Representatives:*

The undersigned Justices of the Supreme Court submit the following opinion with respect to the constitutionality of Senate Bill No. 117 entitled "An Act relative to cemetery trust funds."

Towns are authorized by statute to hold in trust "gifts, legacies and devises made to them for the care of cemeteries and burial lots when the terms of the gift, legacy or devise do not impose any liability upon the town beyond the amount of the gift, legacy or devise and the income thereof." RSA 31:20. Towns may likewise receive funds from cemetery associations or individuals for the care of cemeteries or lots, "and the income thereof shall be expended by the town in accordance with the terms of the trust or contract under which the funds were received." RSA 31:21.

Senate Bill No. 117 would amend s. 20, *supra,* by adding to the section a provision that "the income accumulation of a particular burial lot trust fund . . . may be used for the general care of the cemetery where said lot is located" subject to three qualifications: (1) that the terms of the trust do not otherwise provide; (2) that it can be reasonably anticipated that the income accumulation of the fund will not be required for the care of the particular lot in the foreseeable future; and (3) that if the income of a fund so used shall at any time become insufficient for the

care of the particular lot, the town shall appropriate the funds necessary to maintain the lot. Since the bill provides no procedure for establishing whether the first two conditions are met with respect to a particular trust, it appears to be intended that diversion of the surplus income shall be made at the discretion of the trustees charged by statute with administration of such trusts. RSA 31:22-38.

The law is well established that trusts for the perpetual care of cemeteries and cemetery lots are valid charitable trusts. *In re Byrne Estate*, 98 N. H. 300; *Webster* v. *Sughrow*, 69 N. H. 380; *Tuttle's Petition*, 80 N. H. 36. See anno. 47 A. L. R. (2d) 596, 615. Equally well established is the proposition that the administration of charitable trusts falls within the jurisdiction of courts of equity, which have unquestioned authority in appropriate circumstances to permit departure from the literal terms of such a trust by exercise of the power of *cy pres*. *Drury* v. *Sleeper*, 84 N. H. 98. The courts will exercise this power, however, only when the purpose for which the fund was established cannot be carried out, and diversion of the income to some other purpose can be found to fall within the general intent of the donor expressed in the instrument establishing the trust. *Pittsfield Academy* v. *Attorney General*, 95 N. H. 51; *Petition of Rochester Trust Co.*, 94 N. H. 207; *Boscawen* v. *Attorney General*, 93 N. H. 444, 445, and cases cited. If the trust instrument discloses no general charitable intent, as distinguished from the particular purpose for which the gift was made, the trust will fail, and its assets will be held by the trustee subject to a resulting trust in favor of the donor or his estate. See *Clark* v. *Campbell*, 82 N. H. 281, 288; *First Universalist Society of Bath* v. *Swett*, 148 Me. 142; IV Scott, Trusts (2d *ed.*) ss. 413, 432.

The power of courts of equity to administer charitable trusts *cy pres* is so firmly established and so frequently resorted to, that the authority of the Legislature with respect to the disposition of charitable trust funds has not been much mooted. Prior to the establishment of American jurisprudence, the English Crown was endowed with prerogative power with respect to the disposition of funds left for charity in cases where the particular use intended was not specified, or if specified was illegal. Authorities in the field of trusts have expressed the view that the prerogative power of the Crown has no place in our jurisprudence. IV Scott, Trusts (2d *ed.*) ss. 399.1, 399.5. In the Restatement, Trusts, s. 399,

*comment* e, it is said: "The prerogative power does not exist in the United States; it cannot be exercised even by the legislature, although the legislature can enact general rules as to the extent and the exercise of the judicial power of the court to apply *cy pres* property which is given for charitable purposes."

We are aware of no instance in which the exercise of prerogative power by the courts has been thought necessary or proper in New Hampshire. In *French* v. *Lawrence,* 76 N. H. 234, a will before the court designated the particular object which the testator desired to promote, and his purpose was legal. Hence it was found unnecessary to consider whether the court had jurisdiction of causes involving bequests for unspecified charitable purposes, or seeking diversion of funds from an illegal purpose to one which would be legal. See also, *Haynes* v. *Carr,* 70 N. H. 463, 465, 481.

The authority of the Legislature in such matters has been said to be limited to the enactment of "general rules as to the extent and the exercise of the judicial power of the court" (Restatement, Trusts, *supra*); and the legislative power to "control the administration of charitable trusts already created" is considered to be "limited by provisions of the federal and state constitutions." IV Scott, Trusts, *supra, s.* 399.5. Consistently with these principles, the Supreme Judicial Court of Massachusetts when called upon for an advisory opinion concerning a series of legislative bills relating to transfer or disposition of assets of certain charitable trusts, advised the Senate of that Commonwealth that while the Legislature might "enact general laws respecting the regulation of charitable trusts," such trusts "held upon trusts expressed in writing or necessarily implied from the nature of the transaction, constitute obligations which ought to be enforced and held sacred under the Constitution." The court continued: "It is not within the power of the Legislature to terminate a charitable trust, to change its administration upon grounds of expediency, or to seek to control its disposition under the doctrine of *cy pres.* Determination of the uses to which shall be devoted trusts no longer susceptible of execution according to their foundation is a well recognized branch of chancery jurisdiction . . . respecting which there is constant resort to the judicial courts for decision." *Opinion of the Justices to the Senate,* 237 Mass. 613, 617, 618. See also, *Bridgeport Public Library & Reading Room* v. *Burroughs,* 85 Conn. 309; IV Scott, Trusts, *supra, s.* 367.3.

In *Boscawen* v. *Attorney General,* 93 N. H. 444, *supra,* the town

invoked the *cy pres* powers of the court, seeking authority to expend for the general care of a cemetery in that town the surplus income of a fund held in trust for the care of a particular lot in the cemetery. After reviewing the circumstances of the fund, and the purpose of the testatrix in establishing the trust, the court held that exercise of the power of *cy pres* would not be appropriate.

Senate Bill No. 117, if enacted into law, would permit use of the trust estate involved in *Boscawen* v. *Attorney General, supra,* for the purposes for which the court there concluded, under established legal principles, that it might not lawfully be used. In effect the bill would be an exercise of what amounts to a legislative power of *cy pres* with respect to all cemetery trusts having surplus income, without regard to established principles of law relating to the use of such funds, or the terms of the trusts so long as they did not expressly forbid the use.

We are of the opinion that this may not constitutionally be done by the Legislature. Such a course would seem to be an invasion of established equitable powers of the courts, and hence in violation of the Constitution, Part I, *Art.* 37th. In essence the bill proposes to "[abolish] the judicial function with respect to a subject essentially judicial in its nature . . . and substitutes for that judicial function a legislative determination . . . . " *Worcester County National Bank, Petitioner,* 263 Mass. 444, 459. This the Constitution does not permit. *Art.* 37th, *supra; Opinion of the Court,* 4 N. H. 565, 572, 573. See note, 101 U. Pa. L. Rev. 1087. See also, *Greenville* v. *Mason,* 53 N. H. 515, 518.

We therefore conclude that Senate Bill No. 117, if enacted into law, would be unconstitutional. So far as the purposes of the bill may be otherwise accomplished, this must be done through the courts by the application of established principles of law to the circumstances of particular trusts, as was sought to be done in *Boscawen* v. *Attorney General, supra.*

Laurence I. Duncan,
Amos N. Blandin, Jr.,
Edward J. Lampron,
Stephen M. Wheeler.

Whatever are the constitutional infirmities of the pending bill relating to cemetery trusts, I wish to add the observation that the Legislature representing a sovereign state may have more

residual power over charitable grants, gifts and trusts — even though strictly it may not be a prerogative power of *cy pres* — than the broad language of the advisory opinion of my colleagues indicates. *Opinion of the Justices,* 81 N. H. 573, 577-584; IV Scott, Trusts, *s.* 381, *p.* 2742 (1956); anno. 40 A. L. R. (2d) 556, 561; *Trustees of New Castle Common* v. *Gordy,* (Del.) 93 A. (2d) 509; *Church of Jesus Christ of L. D. S.* v. *United States,* 136 U. S. 1. Since that problem can be more advantageously considered and decided in a specific case rather than in an advisory opinion, it is preferable to make a final decision in a case which presents the problem concretely.

FRANK R. KENISON.

June 28, 1957.

*Ernest R. D'Amours,* Director of Charitable Trusts for the bill.