Department of Employment Security
No. 84-138

APPEAL OF KENNETH PETERSON
(New Hampshire Department of Employment Security)

June 17, 1985

*Bruce E. Friedman,* Franklin Pierce Law Center Family and Housing Law Clinic, of Concord, by brief and orally, for the plaintiff.

*Gregory H. Smith,* attorney general (*Daniel J. Mullen,* assistant attorney general, on the brief and orally), for the State.

SOUTER, J. This is an appeal under RSA 282-A:67 (Supp. 1983) from a decision of the appeal tribunal of the New Hampshire Department of Employment Security (DES). The appeal tribunal denied the plaintiff's request for unemployment compensation benefits on the ground that the plaintiff had terminated his prior employment voluntarily without good cause attributable to his employer. RSA 282-A:32, I(a) (Supp. 1983); N.H. ADMIN. RULES, Emp 503.01. We reverse.

The plaintiff was disabled in February, 1982, in the course of employment as an aide at New Hampshire Hospital. The evidence

indicates that during the period of disability he was treated as an employee on leave, and although his salary stopped, he received weekly workers' compensation benefits, presumably under RSA 281:25, plus vocational rehabilitation benefits under RSA 281:21-b.

Following recovery from surgery for his injury the plaintiff was unable to return to his job. He and a rehabilitation counselor then presented a plan to the New Hampshire Department of Labor under which the plaintiff would receive vocational rehabilitation benefits to defray the expense of attending college, would seek a new job consistent with his college schedule, and would receive other workers' compensation benefits for no more than twelve further weeks.

There was evidence that the department of labor felt that the limitation of further weekly benefits to twelve weeks was not in the plaintiff's interest and that the requested educational benefits were too extensive. The department of labor proposed instead that the plaintiff agree with the State, as his employer, to accept a lump sum benefit under RSA 281:33 (Supp. 1983) in lieu of all further workers' compensation benefits, after resigning from his hospital job. The defendant agreed to this and received the lump sum in June, 1983.

Before obtaining new employment he sought unemployment compensation benefits under RSA chapter 282-A (Supp. 1983). DES denied benefits on the ground that plaintiff had voluntarily left his employment, without good cause within the meaning of RSA 282-A:32, I(a) (Supp. 1983), that is, without good cause attributable to his employer as required by N.H. ADMIN. RULES, Emp 503.01. *See Appeal of the City of Franklin*, 125 N.H. 761, 485 A.2d 295 (1984). The issue before us is whether the appeal tribunal was correct in upholding this denial. *See* RSA 282-A:53 and :67 (Supp. 1983). We hold that it was not.

It is elementary law that an employee is not entitled to unemployment compensation benefits after a resignation for personal reasons. *Putnam v. Dept. of Employment Security*, 103 N.H. 495, 497, 175 A.2d 519, 520 (1961). We have held that the combined effect of the statute and administrative regulation applicable here is that an employee who voluntarily leaves employment is not entitled to benefits unless his resignation has "some connection with or relation to the employment . . . ." *Nashua Corp. v. Brown*, 99 N.H. 205, 207, 108 A.2d 52, 54 (1954). There is such a connection when the employee quits because an injury received in the course of his employment has left him unable to perform further services for his employer. *Raffety v. Iowa Emp. Sec. Comm.*, 247 Iowa 896, 76 N.W.2d 787 (1956).

In the present case, the plaintiff left his employment at New Hampshire Hospital because an injury suffered in the course of his employment prevented him from discharging his duties and the hospital could offer him no work that he could do. Hence, the plaintiff is entitled to benefits unless it can be said that his agreement to resign and take the lump sum workers' compensation benefit breaks the direct causal connection between the injury and the resignation.

The plaintiff argues that the agreement may not be given any such effect, because to do so would violate the terms of RSA 282-A:157 (Supp. 1983), which provides that "[a]ny agreement by an individual to waive, release or commute his rights to benefits or any other rights under this chapter shall be void." In support of this argument the plaintiff has cited cases dealing with the application of such a statute to collective bargaining agreement provisions for mandatory retirement at a given age. *See, e.g., Campbell Soup Co. v. Div. of Employment Security*, 13 N.J. 431, 100 A.2d 287 (1953). Such cases stand for the proposition that employees subject to such an agreement who wish to work after the mandatory retirement age do not voluntarily quit, within the meaning of the unemployment compensation laws. Therefore, to construe the retirement provision as disqualifying a claimant from receiving unemployment compensation would offend the prohibition on waiver of unemployment benefits. *Contra Kentucky Unemployment Insurance Commission v. Reynolds Metals Company*, 360 S.W.2d 746 (Ky. 1962).

We do not find *Campbell* and like cases on point, however, for they deal with agreements to retire that were not the personal agreements of the employees in question, but were imposed on all employees willy-nilly. Rather, we find a more basic reason for declining to recognize the present agreement as disqualifying the plaintiff.

 The effect to be given the plaintiff's agreement must be decided in light of the obvious public policy underlying the law in question, to lighten the burdens of the unemployed. Laws 1981, 408:2. Therefore, unless a resignation agreement between employer and injured employee would provide some valuable benefit to lighten the burden of unemployment, that agreement should not be recognized as breaking the connection between a debilitating work-related injury and the consequent resignation. In determining how valuable an agreed-upon benefit must be in order to recognize the agreement as breaking the connection between injury and resignation, we start with the proposition that the benefit must be one to which the employee would not be entitled without the agreement. For without some incremental benefit under the agreement, the

employee would in effect be resigning for nothing; to construe such a naked agreement as disqualifying the employee from unemployment compensation would necessarily turn the agreement into a waiver of benefits. Further, given the remedial nature of the statute, *Appeal of Gallant*, 125 N.H. 832, 835, 485 A.2d 1034, 1037 (1984), the burden should be on the employer to demonstrate that the agreement provided an incremental benefit valuable enough to be considered a reasonable substitute for unemployment compensation.

On the present record, no such benefit could be found. While the agreement provided for a lump sum workers' compensation benefit, there is no indication that the lump sum was intended to be, or was, more valuable than a continuation of other workers' compensation benefits would have been. Cf. *Carter v. Brown*, 102 N.H. 271, 155 A.2d 176 (1959) (lump sum of more than twice maximum remaining periodic benefits). We cannot tell how much of the lump sum was attributable to anticipated vocational rehabilitation benefits under RSA 281:21-b, or how much, if any, was attributable to weekly benefits that would have been deemed to be wages under RSA 282-A:14, III(a) (Supp. 1983). Hence, it would be total speculation to suggest that the agreement provided anything more valuable than the benefits that the plaintiff might otherwise have received.

We therefore hold that the agreement before us cannot be regarded as breaking the connection between the work-related injury and the resignation that it caused. The judgment of the appeal tribunal is reversed, and the case is remanded for a calculation of benefits due the plaintiff.

*Reversed.*

All concurred.